IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF TEXAS
BEAUMONT DIVISION

| | | |
|---|---|---|
| **KIMBERLEY HARMON**<br>*Plaintiff,*<br><br>v.<br><br>**TEXAS DEPARTMENT OF CRIMINAL JUSTICE and BRYAN COLLIER, in his official capacity as Executive Director,**<br>*Defendants.* | § § § § § § § § § § | <br><br><br>CIVIL ACTION NO. _____<br><br><br><br><br>(Jury Trial Demanded) |

**PLAINTIFF'S ORIGINAL COMPLAINT**

Plaintiff, Kimberly Harmon ("Plaintiff" or "Harmon") files this complaint against Defendants, the Texas Department of Criminal Justice ("TDCJ") and TDCJ's Executive Director Bryan Collier ("Collier"), in his official capacity, seeking damages, declaratory and injunctive relief for violations of federal law. In support thereof, Plaintiff would show the following:

**I. INTRODUCTION**

1. Defendants discriminated against Plaintiff on the basis of her disability by failing to make reasonable workplace accommodations, terminating Plaintiff's employment, retaliating against her, and by using discriminatory employment policies and practices all in violation of federal law. This is an action to redress that discrimination and is brought under the Americans with Disabilities Act of 1990, as amended, 42 U.S.C. § 12101 *et seq.* (hereinafter "ADA") and Section 504 of the Rehabilitation Act 1973, as amended, 29 U.S.C. § 794 (hereinafter "Section 504").

2. Plaintiff sues Defendants TDCJ, and Bryan Collier in his official capacity, and seeks an order of reinstatement; an order under Sec. 504 only making her whole for lost pay and

1

benefits, and for actual damages; an order awarding her attorneys' fees, costs, and litigation expenses; and other declaratory and injunctive relief.

## II. PARTIES

3. Plaintiff Kimberly Harmon is a Texas resident who was employed by the Defendant, TDCJ, at a facility within the Eastern District of Texas. At all times relevant hereto, Plaintiff was an employee as that term is defined in the ADA and the Rehabilitation Act.

4. Defendant, TDCJ, is the agency of the state of Texas charged with operating and managing the state prison system. *See* Tex. Gov't Code § 493.004. TDCJ may be served with citation and process by personal service on its Executive Director, Bryan Collier, at TDCJ's office at 209 West 14th Street, 5th Floor, Austin, Texas 78701 or by certified mail return receipt requested to Texas Department of Criminal Justice, P.O. Box 13084- Capital Station, Austin, Texas 78711-3084.

5. Defendant, Bryan Collier, is the Executive Director of the Texas Department of Criminal Justice. Bryan Collier may be served with citation and process by personal service at TDCJ's office at 209 West 14th Street, 5th Floor, Price Daniel Building, Austin, Texas 78701 or by certified mail return receipt requested to Texas Department of Criminal Justice, P.O. Box 13084- Capital Station, Austin, Texas 78711-3084.

## III. JURISDICTION AND VENUE

6. This Court has jurisdiction over Plaintiff's claims under the ADA and Rehabilitation Act pursuant to 28 U.S.C. § 1331 (Federal Question).

7. Venue is proper in this district pursuant to 28 U.S.C. § 1391(b)(1), as the acts and omissions complained of occurred in Jefferson County, which is within this division and district.

## IV. EXHAUSTION OF ADMINISTRATIVE REMEDIES

8. On July 25, 2018 Plaintiff filed a charge of discrimination with the Equal Employment Opportunity Commission ("EEOC"). A true and correct copy of Plaintiff's EEOC Charge is attached as Exhibit A.

9. On May 13, 2020 the EEOC issued a Determination Letter finding that the TDCJ had discriminated against Plaintiff in violation of the ADA. A true and correct copy of the Determination Letter is attached as Exhibit B.

10. On August 31, 2020 Plaintiff received the Dismissal and Notice of Right to Sue letter from the Department of Justice. A true and correct copy of the Notice of Right to Sue is attached as Exhibit C.

## V. STATEMENT OF FACTS

11. Plaintiff initially worked for the Texas Department of Criminal Justice ("TDCJ") from 1998 until March 2008, when she resigned.

12. In February 2009, Plaintiff was rehired by the TDCJ and assigned to the Larry Gist Unit in Beaumont, Texas as a Correctional Officer.

13. In total, Plaintiff served the State of Texas through her employment at the TDCJ for more than 18 years.

14. Plaintiff suffers from diabetes, hypertension, and chronic lower back pain. As a result of amendments to the Americans with Disabilities Act, which became effective on 1 January 2009, persons with diabetes are virtually always considered to have a "disability" within the meaning of that law. Diabetes constitutes a substantial limitation on endocrine system functioning—the ADA was amended to extend its coverage to persons with a substantial limitation in, among other things, a major bodily function, such as the endocrine system.

15. On or around August 21, 2017, while Plaintiff was on medical leave, a TDCJ Human Resources representative, Amy Foreman, contacted Plaintiff and informed her that Plaintiff had been moved from the first shift to the second shift by the Warden of the Gist Unit, Charles Siringi. Plaintiff was given no prior warning, nor was she consulted, concerning this shift change.

16. When Plaintiff asked why she had been demoted to the second shift, Foreman would not provide an explanation and told Plaintiff to take the matter up with Warden Siring.

17. Plaintiff also asked Foreman if she was the only officer being involuntarily moved from the first shift to the second. Foreman admitted that she was.

18. Plaintiff made numerous efforts to contact Warden Siringi while still on medical leave to discuss the shift change and to ensure that she would be assigned to the first shift when she returned to work. Such efforts included faxing requests for an explanation for the shift change to the Human Resources Department and leaving many messages with the Warden's secretary because he refused to take or return Plaintiff's calls.

19. On September 1, 2017, Plaintiff was contacted by another Human Resources Representative, Kelly, and told that she was being reassigned to the first shift. Plaintiff believed that the matter had been resolved.

20. On September 25, 2017 when Plaintiff returned to work from medical leave, she learned that she had again been demoted to the second shift. Plaintiff's superior, Lieutenant Rollins, said that she was no longer on the first shift roster and that she was the only officer that had been moved from the first to second shift.

21. On September 29, 2017, Plaintiff submitted an EEO Complaint regarding the shift demotion,

22. On October 20, 2017, Plaintiff filed and official grievance with the TDCJ Human Resources Department regarding the shift change.

23. In response to Plaintiff's complaints, Warden Siringi stated that when he made the decision, he was not aware of Plaintiff's disabilities despite her having been on medical leave when the decision was made.

24. Finally, on October 27, 2017, Plaintiff's request that she be reassigned to the first shift was granted. In an inter-office communication sent by the Director of TDCJ Region III, John Werner, to Shenane Boston, a TDCJ Human Resources Specialist, on October 26, 2017 Werner explicitly stated that Warden Siringi could have handled the situation better.

25. TDCJ claims that an Accommodations Coordinator mailed an ADA packet to Plaintiff on October 3, 2017 in response to her September 29, 2017 EEO Complaint. The Accommodations Coordinator claims that because Plaintiff did not complete this packet, the Accommodations Department was unaware of the Plaintiff's medical conditions, limitations, and restrictions. In fact, Plaintiff received no correspondence of any kind from TDCJ during this time period.

26. Regardless, Plaintiff had described her medical conditions and her restrictions in her initial September 29th EEO complaint. Plaintiff described them again, in even more depth, in her response to TDCJ's request for more information regarding Plaintiff submitted October 10, 2017 complaint.

27. At all times relevant to the above events, Defendant and its Human Resources Department were aware of Plaintiff's disabilities.

28. On or around May 4, 2018, Plaintiff went back on medical leave under the designation of Leave Without Pay-Medical (LWOP-Medical). TDCJ Medical and Parental Leave

policies state that the maximum number of calendar days an employee may take for any combination of "Leave Without Pay" ("LWOP") entitlements and approved leave is 180 calendar days within a rolling 12-month period.

29. On May 30, 2018 a representative of the TDCJ Human Resources Department, Marisol Reyes, left a voicemail stating that Plaintiff's LWOP-Medical days had been exhausted and that Plaintiff must to return to work the following day, May 31, 2018, or her employment would be terminated.

30. At no point before this date was Plaintiff told her medical leave would be exhausted by May 30, 2018. Neither was Plaintiff told how many remaining medical leave days she had when she went on leave on or around May 4, 2018.

31. TDCJ's Medical and Parental Leave policies state that if an employee anticipates missing, or actually misses, more than three consecutive workdays due to a sick leave event and does not provide a PERS 24 and an Health Care Provider's Statement prior to taking leave, within five workdays of the employee's initial request for leave, the human resources representative shall send the employee via first class mail a PERS 301 indicating that the employee shall be placed on sick leave that is not FML eligible. Additionally, the PERS 301 indicates how many days of sick leave the requesting party has been permitted. Also, if the employee has been on leave due to the employee's own illness or injury and the employee is returning to work after an absence of more than three consecutive workdays, the employee must provide a release to return to work to the employee's supervisor.

32. The above policies also state that if an employee's release to return to work identifies any restrictions or limitations or indicates a need for a temporary change in work

6

assignments, the human resources representative shall immediately provide the release to the warden or department head for a determination of the employee's status.

33. Additionally, the Notification of Medical and Family Leave form, which was required to be sent to Plaintiff by certified mail but was never received or acknowledged by Plaintiff, states that if a doctor's note is required but not received for an employee to return to work, the return to work is delayed until the note is provided. If any restrictions or limitations are listed on the release to work, the return to work is governed by the Americans with Disabilities Act.

34. On May 31, 2018, Plaintiff's doctor submitted a note to Defendant that was received by Marisol Reyes stating that Plaintiff could return to work on June 4, 2018 without restrictions.

35. It was the practice of the Gist Unit to schedule their shift officers to work six (6) days in a row followed by three (3) days off of work. May 31, 2018 corresponded to the end of the six (6) day rotation to which Plaintiff was assigned. Had Plaintiff returned to work on that day she would have worked one (1) day before going on a three (3) day break. Therefore, if Plaintiff's request to return to work on June 4, 2018 rather than May 31, 2018, pursuant to her doctor's note, she would have missed merely one (1) additional day of work and her employment would not have been terminated. The EEOC and the TDCJ both acknowledged that such accommodation would not have caused a hardship to the Gist Unit. Nor did the Gist Unit provide a description of any hardship the accommodation would have caused if granted.

36. On June 1, 2018 Plaintiff received a voicemail message from Marisol Reyes telling Plaintiff that Defendant's Human Resources Department had received the doctor's note but told

7

Plaintiff not to return to work at all because Reyes had sent paperwork to TDCJ Human Resources Headquarters in Huntsville, Texas to begin the termination process.

37. Defendant did not adhere to the ADA or the Rehabilitation Act when notified that Plaintiff's return to work note contained restrictions. Nor did Defendant even consider Plaintiff's request for reasonable accommodation. Plaintiff received her official termination notice on June 5, 2018.

38. Plaintiff's employment was terminated without considering her reasonable request to miss one additional workday before returning to work without any restrictions. The note was not taken into consideration when determining if Plaintiff could be required to return to work on May 31, 2017. Neither did Defendant engage in any form of the interactive process required by the ADA after receiving the note.

39. Defendant had no legitimate reason to terminate Plaintiff's employment. Plaintiff merely exercised her rights under the ADA and the Rehabilitation Act, challenged decisions made by TDCJ in violation of those rights, and requested a reasonable accommodation pursuant to the law. Instead of complying with the ADA and the Rehabilitation Act, Defendant terminated Plaintiff's employment.

## VI. CAUSES OF ACTION:

**Count I: Violations of the ADA against TDCJ'S Executive Director Bryan Collier, in his official capacity.**

40. By this reference, Plaintiff hereby incorporates all prior paragraphs of this Original Complaint as if they were set forth within this cause of action.

41. Plaintiff is a person with a physical disability (actual, record of, and/or regarded as) as defined by the ADA, 42 U.S.C. § 12102(2)(A).

42. Plaintiff was at all times a "qualified individual" as defined by the ADA, 42 U.S.C. § 12111(8).

43. Defendant TDCJ violated the ADA, as amended, including provision of 42 U.S.C. § 12112, and discriminated and retaliated against Plaintiff because of her disability, despite the fact that she was a qualified individual who was, and remains, able to perform the essential functions of the position for which she applied, with or without reasonable accommodation.

44. The unlawful employment practices complained of above were intentional.

45. As a result of the violations of the ADA, as set forth above, Plaintiff is entitled to prospective injunctive relief against Defendant Bryan Collier in his official capacity, including an order of reinstatement to the position and benefits she would have held if she had not been terminated

46. Plaintiff is also entitled to recover reasonable attorney's fees, costs, and litigation expenses from Defendant.

**Count II: Violation of Section 504 of the Rehabilitation Act against the TDCJ.**

47. By this reference, Plaintiff hereby incorporates all prior paragraphs of this Original Complaint as if they were set forth within this cause of action.

48. Plaintiff is a person with a physical disability (actual, record of, and/or regarded as) as defined by the Rehabilitation Act, 29 U.S.C. §§ 705(9)(B) and (20)(B).

49. For the reasons set out above, Defendant also intentionally discriminated and retaliated against Plaintiff in violation of the Rehabilitation Act of 1973, solely because of her disability.

50. Plaintiff is entitled to an order making her whole by Plaintiff be awarded her back pay, and lost benefits and seniority; and compensatory damages;

51. Plaintiff is also entitled to be awarded reasonable attorney's fees, including litigation expenses and costs; and cost for any and all appeals to other courts.

## VII. ATTORNEY FEES AND COSTS

52. Pursuant to the ADA and the Rehabilitation Act, Plaintiff is entitled to recover attorneys' fees and costs, including, but not limited to, expert expenses.

## VIII. REQUEST FOR JURY TRIAL

53. Plaintiff requests a trial by jury on all issues that can be tried to a jury.

## IX. RELIEF REQUESTED

WHEREFORE, PREMISES CONSIDERED, Plaintiff respectfully requests that this Court:

A. Grant a permanent injunction against Defendant Collier (under the ADA) and against TDCJ (under Section 504), enjoining them and their officers, successors, assigns and all persons in active concert or participation with it, from engaging in any further practice which discriminates against Plaintiff on the basis of her disability;

B. Place Plaintiff in a comparable position to the one she would have had absent the improper acts of the Defendants;

C. Award Plaintiff appropriate back-pay with prejudgment interest under Section 504 only;

D. Award Plaintiff compensatory damages for her past and future pecuniary and non-pecuniary losses under Plaintiff's claims under Section 504 only;

E. Award Plaintiff reasonable attorney's fees, costs, and litigation expenses from Defendants;

F. Enter a judgment in favor of Plaintiff; and,

G. Grant Plaintiff such further and other relief as the Court deems necessary and proper.

Respectfully submitted,

By: */s/Sara Richey*_____
    Sara Richey

Sara Richey
Federal Bar No: 1147425
Texas Bar No. 24068763
THE RICHEY LAW FIRM
3801 Kirby Dr., Suite 344
Houston, TX 77098
Phone: 713-636-9931
sara@thericheylawfirm.com
ATTORNEY-IN-CHARGE

and

Clayton D. Craighead
Texas Bar No. 24065092
THE CRAIGHEAD LAW FIRM, PLLC
440 Louisiana, Suite 900
Houston, TX 77002
Phone: 832-798-1184
clayton.craighead@thetxlawfirm.com