IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF TEXAS
BEAUMONT DIVISION

KIMBERLY HARMON,                        §
                                        §
        *Plaintiff*,                    §
                                        §
                                        §
v.                                      §        CIVIL ACTION NO. 1:20-CV-00460
                                        §        JUDGE MICHAEL J. TRUNCALE
TEXAS DEPARTMENT OF CRIMINAL            §
JUSTICE, and BRYAN COLLIER, in his      §
official capacity as Executive Director, §
                                        §
        *Defendant*.                    §

## ORDER GRANTING IN PART AND DENYING IN PART PLAINTIFF'S OMNIBUS MOTION ON REMAND

Before the Court is Plaintiff Kimberly Harmon (Harmon)'s Omnibus Motion on Remand (the Motion), filed on November 24, 2025. [Dkt. 128]. Defendant Texas Department of Criminal Justice (the Department) filed its response on December 22, 2025, making the Motion ripe for review. [Dkt. 129]. Harmon did not file a reply brief.

For the reasons below, the Motion is **GRANTED IN PART** and **DENIED IN PART.**

### I. BACKGROUND

Kimberly Harmon worked as a corrections officer for the Department for nearly nineteen years between 1998 and 2018.[1] *See* [Dkt. 1 at ¶¶ 11–13]. Harmon, who suffers from diabetes, hypertension, and chronic lower back pain, took an extended medical leave in 2017 to tend to her health. *Id.* at ¶¶ 14–15. While Harmon was on leave, the Department demoted her to the second shift at the facility where she worked. [Dkt. 126-1 at 2]. Harmon filed a grievance and an equal-employment-opportunity complaint with the Department, which resulted in her being re-instated to her original shift. *Id.* at 3. Harmon continued to work until May 4, 2018, when she once again went on medical leave without pay. [Dkt. 1 at ¶ 28]. On May 30, 2018, the Department's human resources

---

[1] Harmon temporarily resigned in March 2008 and was re-hired in February 2009.

staff contacted Harmon and told her that her employment would be terminated if she did not return to work the following day. *Id.* at ¶ 29. The human resources staff explained that Harmon could only take 180 days of medical leave every twelve months, and that she had exhausted her medical-leave time. *See id.* at 29–31. However, the Department had told Harmon just two months earlier that she still had eighty days of leave remaining. [Dkt. 126-1 at 3]. To make matters worse, Harmon did not receive the Department's May 30 communication because her phone was broken. *Id.* at 4. By the time Harmon was able to respond and explain her situation, the Department had already terminated her. [Dkt. 1 at ¶ 36]. Harmon's termination prevented her from receiving a retirement annuity, which would have been worth $861,965.47 if she had continued working for the Department through 2029. *See* [Dkt. 126-1 at 34].

Harmon re-applied to work for the Department in November 2019, after completing additional training. *Id.* at 4. Although the Department was short on correctional officers, it opted not to hire her back. *Id.* at 5. Following her unsuccessful attempt to return to the Department, Harmon obtained a right-to-sue letter from the Equal Employment Opportunity Commission (EEOC) and sued the Department in this Court on November 11, 2020. [Dkt. 1]. Harmon sought to recover both backpay and the projected lifetime value of her annuity, arguing that the Department terminated her in violation of the Rehabilitation Act of 1973. *See id.*

At trial in April 2022, a jury found the Department liable for both discrimination and retaliation under the Rehabilitation Act and awarded Harmon $1.8 million in damages. [Dkt. 73 at 1–3]. Following trial, the Court reduced the jury's award to $1 million. *See* [Dkt. 111]. However, the Court declined to reduce Harmon's damages any further, prompting the Department to appeal. *See* [Dkt. 118; Dkt. 120]. The Court also denied Harmon's post-trial motion for front pay, since she did not request front pay in her pleadings. [Dkt. 109].

On appeal, the Fifth Circuit determined that it was improper for the jury to award Harmon

her full retirement benefits. [Dkt. 126-1 at 38]. The Fifth Circuit remanded the case and directed this Court to determine "the amount [of Harmon's retirement benefits] that may be included as backpay, if any, and remit the jury's [award] accordingly." *Id.* at 39. The Fifth Circuit also instructed the Court to decide, in its "sound discretion," whether Harmon's attorney's fees should be reduced. *Id.* at 40. Following the Fifth Circuit's decision, the Court ordered the parties to submit briefing on Texas law's treatment of Employee Retirement Savings (ERS) benefits. [Dkt. 127]. The parties then argued their briefs at a hearing on January 9, 2026. [Dkt. 130].

## II. DISCUSSION

### A. Remittitur

Remittitur involves reducing a jury's damage award to the maximum amount that the jury could properly have awarded. *Brunnemann v. Terra Int'l, Inc.*, 975 F.2d 175, 178 (5th Cir. 1992). Even when remittitur is appropriate, the court must allow the plaintiff to instead opt for a new trial on damages alone. *Hetzel v. Prince William Cnty.*, 523 U.S. 208, 211 (1998).

### 1. Availability of ERS Benefits as Backpay

Harmon argues that her annuity is a "fringe benefit" that can properly be awarded as backpay. [Dkt. 128 at 5]. While the Fifth Circuit has held that backpay awards in employment-discrimination cases can include retirement benefits, it has not adopted an "inflexible rule." *See Pettway v. American Cast Iron Pipe Co.*, 494 F.2d 211, 263 (5th Cir. 1974); *Miller v. Raytheon Co.*, 716 F.3d 138, 147 n.3 (5th Cir. 2013). Whether retirement benefits can be included in a backpay award depends on the specific type of benefits involved. *See id.*

Under Texas Government Code section 814.104, state custodial officers become "eligible to retire and receive a service retirement annuity" once they reach 55 years of age and accumulate "at least 10 years of service credit as a . . . custodial officer." *See* Tex. Gov't Code § 814.104(b). Service credit is given for "each month in which a member holds [the applicable] position and for

3

which the required contributions are made by the member and the state." *Id.* § 813.201(a). Hence, employees do not necessarily obtain service credit for each month of employment. *See id.* Although Harmon had worked for the Department for almost nineteen years when she was terminated, she had not accumulated ten years of service credit. [Dkt. 76-2 at 6]. Harmon's statement of retirement benefits, presented as evidence at trial, indicates that she only had six years and nine months of service credit as of June 2016.[2] *See id.* Even if Harmon obtained service credit for the remainder of her tenure with the Department, she would still not have enough to be eligible for an annuity. *See* § 814.104(b).

The Fifth Circuit has affirmed district courts' decisions to deny backpay damages for pension benefits that a plaintiff was not eligible to receive when terminated. *See Bourdais v. New Orleans City*, 485 F.3d 294, 301 (5th Cir. 2007). In *Bourdais*, the plaintiffs sought backpay for pension benefits that they would not have been eligible to receive until several years after trial. *See id.* at 301. Because the pension benefits were not certain to vest and their claimed value was "extremely speculative," the Fifth Circuit upheld the district court's ruling that awarding the pension benefits as backpay would go beyond making the plaintiffs whole. *Id.*

The Fifth Circuit's reasoning in *Bourdais* applies with equal force here. Like the plaintiffs in *Bourdais*, Harmon was not yet eligible to receive her annuity when her claims arose. *See* [Dkt. 76-2 at 6]; § 814.104(b). She still needed to accrue at least one more year of service credit and reach the age of 55 before she could become entitled to receive an annuity of any value. *See* [Dkt. 76-2 at 6]; § 814.104(b). Additional contingencies would need to occur for Harmon to receive an annuity worth the amount that the jury awarded her in backpay. Harmon's annuity would reach a lifetime value of $861,965.47 only if she continued working for the Department through September 2029.

---

[2] Confusingly, the statement also indicated that Harmon would be eligible for retirement "even if [she] stop[ped] working for the state today," provided she did not withdraw her retirement contributions before then. *Id.* at 3.

4

*See* [Dkt. 76-2 at 3]. Even if Harmon had not been terminated and had become eligible to receive an annuity, she would not necessarily have remained at the Department through 2029. Accordingly, her annuity may not have ever reached $861,965.47 in value. Because Harmon was not eligible to receive an annuity at the time of her termination, and her estimate of the annuity's value is speculative, the jury improperly factored her annuity's value into its backpay award. *See Bourdais*, 485 F.3d at 301. As a result, the Court remits Harmon's damages to $227,000, the "uncontested amount of Harmon's backpay." [Dkt. 126-1 at 38].

### 2. Lost Wages

Harmon also requests that the Court award her additional backpay for lost wages through the date of final judgment. [Dkt. 128 at 11]. For three reasons, the Court cannot do so. First, the issue is not properly before the Court on remand.[3] *See Daly v. Sprague*, 742 F.2d 896, 901 (5th Cir. 1984) (holding that the law-of-the-case doctrine bars litigants from raising issues outside the scope of remand). On remand, the Fifth Circuit directed this Court to do two things only: (1) remit the annuity portion of the jury's backpay award and (2) decide whether to reduce Harmon's attorney's fees. The Fifth Circuit did not direct the Court to adjust other aspects of the jury's award. *See* [Dkt. 126-1 at 38, 40]. Second, even if the issue were before the Court, increasing the jury's award would constitute additur in violation of the Seventh Amendment. *See Hawkes v. Ayers*, 537 F.2d 836, 837 (5th Cir. 1976) ("[T]he Seventh Amendment prohibits the utilization of additur . . . where the amount of damages is in dispute."). Third, the jury was instructed to only award backpay for the period between Harmon's termination date and the date of the jury's verdict. *See* [Dkt. 71 at 11]. Accordingly, the Court declines to award Harmon additional backpay for the period between the verdict date and the date of this order.[4]

---

[3] For the same reason, the Court denies Harmon's renewed motion for front pay.

[4] However, if Harmon opts for a new trial on damages instead of accepting the Court's remittitur, she will be eligible to receive backpay through the end of the new trial. *See Palasota v. Haggar Clothing Co.*, 499 F.3d 474, 483 (5th

**B. Attorney's Fees**

The Fifth Circuit directed the Court to exercise its "sound discretion" in determining whether to reduce Harmon's attorney's fees. [Dkt. 126-1 at 40]. The Department argues that, because the Fifth Circuit ordered the Court to reduce Harmon's damages, her initial fee award is no longer reasonable and must be reduced. [Dkt. 129 at 10–11]. Harmon, on the other hand, argues that her attorney's fees should not be reduced, but increased, because of her overall success in defending the Department's appeal. [Dkt. 128 at 8–11].

"[T]he 'most critical factor' in determining the reasonableness of a fee award in a civil rights suit is 'the degree of success obtained.'" *Combs v. City of Huntington*, 829 F.3d 388, 397 (5th Cir. 2016) (citations omitted). In a civil rights suit, a plaintiff's success is measured by comparing her ultimate recovery to the damages she sought. *Farrar v. Hobby*, 506 U.S. 103, 114 (1992). Here, Harmon did not request a specific dollar amount in damages. *See* [Dkt. 88 at 98]. However, Harmon's counsel argued that Harmon was entitled to backpay from June 2018 through the end of trial, as well as the value of her annuity. *Id.* at 98–99. Together, Harmon's annuity and her backpay through the end of trial would have been worth over $1 million. *See* [Dkt. 76-2 at 3; Dkt. 76-28 at 1]. Accordingly, if Harmon accepts the Court's remittitur, she will receive roughly 20 percent of the damages she sought. While substantially less than her original recovery, a 20 percent recovery is not so disproportionately small as to render Harmon's fee award unreasonable. *See Louisiana Power & Light Co. v. Kellstrom*, 50 F.3d 319, 329–31 (5th Cir. 1995) (affirming trial court's refusal to reduce fee award when plaintiff recovered only three percent of damages sought). As such, the Court declines to reduce Harmon's fee award despite her reduced recovery.

However, the Court also declines to award Harmon additional attorney's fees at this juncture. While parties who successfully defend or prosecute an appeal are generally entitled to

---

Cir. 2007) ("[B]ack pay accrues from the date of the commencement of the discriminatory course of conduct causing financial loss until the date damages are 'settled.'").

supplemental attorney's fees incurred in connection with the appeal, Harmon has not submitted evidence of her appeal-related fees. *See Norris v. Hartmarx Specialty Stores, Inc.*, 913 F.2d 253, 257 (5th Cir. 1990). Accordingly, the Court cannot presently determine what additional fees, if any, Harmon is entitled to.

### III. CONCLUSION

It is therefore **ORDERED** that Harmon's Omnibus Motion on Remand [Dkt. 128] is hereby **GRANTED IN PART** and **DENIED IN PART.**

It is further **ORDERED** that Harmon's backpay award is hereby **REMITTED** to $227,000, plus pre-judgment interest and post-judgment interest at the rates provided by law. Harmon may decline the Court's remittitur in favor of a new trial on damages.

It is further **ORDERED** that, if Harmon intends to decline the Court's remittitur in favor of a new trial on damages, she must file a motion for a new trial within twenty-eight (28) days of the date of this order.

It is further **ORDERED** that Harmon's renewed motion for front pay is hereby **DENIED.**

**SIGNED this 2nd day of April, 2026.**

_____

Michael J. Truncale
United States District Judge

7